■ In the Matter of CYNTHIA L. ANDERSON, Appellant, v STATE OF NEW YORK et al., Respondents. [658 NYS2d 762] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Keegan, J.), entered April 5, 1996 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* direct respondents to reinstate petitioner to her prior employment.

In January 1995 the Division of Budget informed respondent

State Department of Social Services (hereinafter DSS) that it must achieve a reduction in work force by midyear. The Division of Budget subsequently approved a plan whereby DSS was to eliminate 127 positions effective July 12, 1995. Under the Civil Service Law, certain employees with permanent status and seniority had the option of displacing lower-level employees selected by DSS as opposed to being laid off (*see*, Civil Service Law § 80; 4 NYCRR 5.5). Because of a longstanding policy of DSS, whereby all employees would receive three weeks' notice of any layoff or reassignment, it was determined that all affected employees had to be so notified by June 21, 1995.

Elizabeth Turner, an Administrative Analyst Trainee I, was initially displaced to a Social Services Assistant. She was subsequently given the option by letter dated June 13, 1995 of a layoff or a "retreat" to the position of Social Services Program Aide in another location, which was occupied by Majorie Sannes. As with all displacement offers, the letter specified that failure to return the enclosed acceptance card in two days would be deemed an acceptance. The next day, Turner met with DSS' personnel administrator and indicated that she would accept the new position. As a result, Sannes was notified on June 16, 1995 that she was being displaced and eventually offered retreat rights to a Keyboard Specialist I position held by petitioner, who DSS alleges had the least seniority of all persons holding that position in the State. Sannes accepted the offer to displace petitioner and petitioner was notified by letter dated June 20, 1995 that she would be laid off on July 12, 1995 and placed on a preferred reemployment list.

Thereafter, on June 26, 1995, Turner changed her mind and submitted her displacement card declining the new position formerly held by Sannes. Nevertheless, Sannes still displaced petitioner and petitioner was laid off. Petitioner commenced this proceeding arguing, *inter alia*, that DSS' actions were arbitrary and capricious and in violation of law. Supreme Court dismissed the petition and petitioner appeals.

We affirm. In our view, petitioner failed in her burden of establishing that DSS' actions were arbitrary, capricious or affected by an error of law (*see, Matter of Shafer v Regan*, 171 AD2d 311, 315, *affd* 80 NY2d 1006). Contrary to petitioner's arguments, DSS' actions in displacing her based on the knowledge it knew to be true at the time, i.e., Turner's acceptance of the offer, were in compliance with the displacement methodology outlined in Civil Service Law § 80 (7) (*see,* 4 NYCRR 5.5 [c]; *see also, Matter of Saur v Director of Creedmore Psychiatric Ctr.*, 41 NY2d 1023). Here, it is undisputed that Turner had

higher seniority over Sannes, who in turn had higher seniority over petitioner.* Nevertheless, petitioner argues that it was arbitrary and capricious for DSS not to rescind her layoff notice after Turner changed her mind about accepting Sannes's position.

There is nothing in Civil Service Law § 80 or the applicable regulations that requires an employer to rescind a layoff notice or reverse the layoff process in a situation where an employee within the chain of displacement subsequently decides to opt for a layoff as opposed to exercising retreat rights. In this case, DSS rationally chose not to reverse the displacements once Turner had changed her mind after the cutoff date in light of, *inter alia*, the complex nature of the State-wide displacement process, the July 12, 1995 deadline in the reduction of workforce, the three-week notice rule and the potential impact on other employees. Where, as here, an agency's determination in conformity with the relevant statute is motivated by, *inter alia*, a desire to avoid a constant shifting of positions with attendant confusion, it is not necessary for a court to agree with the agency's rationale for it to conclude that the agency's implementation of the statutory scheme was not arbitrary or capricious (*see, e.g., Matter of Rubin v Levine*, 41 NY2d 1024, 1025).

Petitioner's remaining arguments, including her conclusory allegations of bad faith, have been examined and found to be unpersuasive. Contrary to petitioner's contention, 4 NYCRR 5.5 (b) does not require that DSS obtain an employee's written commitment prior to displacement, but states only that supervisors "may take such steps as it may deem necessary" to try to obtain such a written commitment.

Mercure, Casey, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

* Petitioner mistakenly tries to compare her situation to cases where tenured teachers were incorrectly reassigned (*see, e.g., Matter of Steele v Board of Educ.*, 53 AD2d 674, *affd* 42 NY2d 840; *see also, Matter of Lewis v Cleveland Hill Union Free School Dist.*, 119 AD2d 263). However, it is undisputed that although petitioner was classified as a "permanent" employee (i.e., nonprobational), petitioner had no tenure and was always employed in her position subject to Civil Service Law § 80.